**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Joseph Thomas Barket, Jr.,

Plaintiff,

v.

NextiraOne, LLC, f/k/a Nextira, LLC,
f/k/a Williams Communications Solutions, LLC,
f/k/a Wiltel Communication System,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-278 ADM/AJB

---

Jeffrey D. Schiek, Esq., Phillip G. Villaume and Associates, Edina, MN, appeared for and on behalf of Plaintiff.

Barak J. Babcock, Esq., Seaton, Beck & Peters, P.A., Edina, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On April 9, 2002, the Motion for Summary Judgment [Doc. No. 12] of Defendant NextiraOne, LLC ("NextiraOne"), was argued before the undersigned United States District Judge. Plaintiff Joseph Thomas Barket, Jr. ("Plaintiff"), sued NextiraOne alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and retaliation under the Minnesota Workers' Compensation Act, Minn. Stat. § 176.82. For the reasons stated on the record, NextiraOne's Motion for Summary Judgment on Plaintiff's Workers' Compensation retaliation claim was granted during the April 9, 2002, hearing. For the reasons set forth below, the Summary Judgment Motion is now granted with respect to Plaintiff's remaining claims.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. BACKGROUND

Plaintiff is a former employee of NextiraOne, who was hired in 1964 by a predecessor of NextiraOne. Plaintiff was a Technician III ("Tech. III"), and his duties were comprised of installing and maintaining telephone and data communications apparatus, including maintaining computer terminals and telephone switches, and laying cable. Barket Dep. at 6-7. Performing these duties required Plaintiff to lift between 50 and 75 pounds, to do commercial driving, to climb steps, to stand, bend and stoop, and occasionally to use a ladder. Id. at 9, 11, 12.

On November 17, 1997, Plaintiff suffered extensive and severe injuries to his right foot and ankle as a result of an automobile accident while driving a company van to a customer's site. Id. at 17-19. Plaintiff underwent surgery, followed by physical rehabilitation in the hospital and at home, under the care of his treating physician Dr. Paul D. Hartleben. Id. at 26. As a result of this injury, Plaintiff was entirely precluded from work by Dr. Hartleben from November 17, 1997, to June 15, 1998. Beginning June 15, 1998, Plaintiff was released to light-duty work by Dr. Hartleben, with numerous physical restrictions including a maximum of four hours of work per day, no lifting over five pounds, no commercial driving, no stair or ladder climbing, and minimal walking. Beck Aff. Ex. A. On June 22, 1998, Dr. Hartleben further restricted Plaintiff to working four hours only every other day. Id. Ex. B.

Upon returning to work, Plaintiff was assigned by his supervisor Jeff Bird ("Bird") to a light duty position. Barket Dep. at 60-61. The light duty position was created for Plaintiff because such positions did not otherwise exist at NextiraOne; Bird told Plaintiff that it was only a temporary position. Id. at 61, 196. Plaintiff was on light duty work until he was terminated on February 22, 1999. Id. at 64. Plaintiff admits that prior to his termination he was not performing

the essential functions of the Tech. III position, except for one day in January, 1999, when he worked a full day and provisions were made for limited walking and no ladder use. Id. at 65. Bird created light duty tasks for Plaintiff to perform by taking filing and organizational paperwork from other employees. Bird Aff. ¶¶ 3, 4.

In early 1999, Bird encountered difficulty finding work Plaintiff could perform within his medical restrictions, which had been modified on August 24, 1998, to allow four hours of work per day on four days a week. Bird Aff. ¶ 4; Beck Aff. Ex. D. In a February 9, 1999, letter to his supervisors, Bird reported that his branch had run out of light duty work for Plaintiff to do, and that he was unable to procure any such work for Plaintiff from other company departments. Bird Aff. Ex. B. NextiraOne's Director of Operations, James Morton ("Morton") had been conducting a productivity analysis for the company in late 1998, during which time it came to his attention that Plaintiff had been doing light duty work for several months despite NextiraOne's policy not to create light duty positions. Morton Aff. ¶ 3. Upon review of Plaintiff's productivity in early February, Morton, along with Marty Jacobs, the regional manager that supervised Bird, and Claude Grimes, the Human Resources Manager for Plaintiff's region, decided to terminate Plaintiff because "there was not any productive work [he] could complete, and it was not clear that his medical restrictions would ever be lifted . . . ." Id. ¶ 4; see also Grimes Aff. ¶¶ 3-4; Bird Aff. ¶ 9. On February 22, Bird sent Plaintiff a termination notice stating that his position had been terminated "based upon business requirements." Bird Aff. Ex. A.

On February 15, 1999, Dr. Hartleben amended Plaintiff's work restrictions to allow commercial driving and eight hour work days, specifying four hours of field work per day (as

opposed to office work) immediately, while advancing to eight hours of field work per day by April 1, 1999. Beck Aff. Ex. E. NextiraOne asserts it had not received notification of this amended work restriction at the time the decision was made to terminate Plaintiff on or about February 9, 1999, and Plaintiff does not contest this assertion. Barket Dep. at 74.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

### B. Discrimination

#### 1. Direct Evidence

When a plaintiff puts forth direct evidence that an illegal criterion, such as age [or disability], was used in the employer's decision to terminate the plaintiff, the Court applies the standards enunciated in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as modified by § 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m). Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). Under this modified Price Waterhouse standard, a defendant is liable for discrimination upon proof by direct evidence that an employer acted on the basis of a discriminatory motive, and proof that the employer would have made the same decision absent the discriminatory motive is only relevant to determining the appropriate remedy. Id.

Plaintiff asserts that four statements made to him by his supervisor, Bird, constitute direct evidence of age discrimination. Plaintiff alleges[1] that Bird made the following statements to him:

(1) "The years that you have, there's no reason why that you couldn't take early retirement and be on your own."

(2) "You've been with the company a long time. Why don't you consider early retirement?"

(3) "You've got a pension that you can draw; you can draw your Social Security at a reduced rate."

(4) "You know, Social Security is available to you, possibly the pension from [NextiraOne]. Why don't you retire?"

Barket Aff. at 98, 99, 104, 163.

---

[1] Defendant accepts for purposes of this Motion that the statements did occur. Def. Mem. in Supp. at 6 n.1.

These statements do not constitute direct evidence of age discrimination. Statements that Plaintiff might want to consider retirement are "age-based only to the extent that one must be of a certain age to retire." Thomure v. Phillips Furniture Co., 30 F.3d 1020, 1025 (8th Cir. 1994); see also Ryther v. KARE 11, 108 F.3d 832, 843 (8th Cir.1997) ("To the extent that . . . statements were made outside the presence of the decisionmakers, . . . they do not, *standing alone,* raise an inference of discrimination.") (emphasis in original).

Even if Bird's statements were sufficient evidence of discrimination, Bird's role as a decision maker regarding the termination of Plaintiff is uncertain. See Regel v. K-Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999). Assuming Bird did play a role in deciding to terminate Plaintiff, he was also the supervisor who created the light duty to keep Plaintiff employed for an eight month period after his injury. This is akin to the situation where the same individual both hires and fires an employee in a relatively short span of time. In such a case, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991); see also Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174 (8th Cir. 1992) (citing Proud with approval).

**2. Indirect Evidence**

Where a plaintiff relies on circumstantial, as opposed to direct, evidence of intentional discrimination, the Court applies the three-stage burden shifting approach developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined by the Court in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Dammen v. UniMed Med. Ctr., 236 F.3d 978, 980 (8th Cir. 2001).

Analysis of both Plaintiff's age discrimination and disability discrimination claims invokes the same framework. Under this framework, the plaintiff bears the initial burden of presenting a prima facie case of discrimination. Dammen, 236 F.3d at 980. If the prima facie case is established, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. Id. This rebuttable presumption shifts the burden[2] to the employer to produce evidence that the plaintiff was rejected (or someone else was preferred) for a "legitimate, nondiscriminatory reason." Id. If the employer articulates such a reason, the presumption disappears and the McDonnell Douglas framework becomes irrelevant. The sole remaining issue is whether the employer discriminated, or "discrimination *vel non*." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The plaintiff then has an opportunity to prove, by preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Dammen, 236 F.3d at 980. Proof that a defendant's proffered reason is unpersuasive or contrived does not establish plaintiff's proffered reason of discrimination is correct, however. Reeves, 530 U.S. at 146-47. That is, it is not enough to *disbelieve* the employer, but rather the plaintiff's explanation of intentional discrimination must be *believed*. Id. at 147.

**a. Age Discrimination**

The ADEA prohibits an employer from discriminating on the basis of a person's age, if such an individual is over 40 years old. See 29 U.S.C. § 631(a); Dammen, 236 F.3d at 980. The language of 29 U.S.C. § 631(a) "does not ban discrimination against employees because they are

---

[2] This framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. Id.

aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). The ADEA states in part that "[i]t shall be an unlawful employment practice for an employer [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a claim under the ADEA, a plaintiff must show that the defendant intentionally discriminated against him or her. Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671, 675 (8th Cir. 1998).

To establish a prima facie case of age discrimination, a plaintiff must demonstrate that: (1) he is within the protected class; (2) he was qualified to perform his job, or was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) younger employees were not treated the same, or he was replaced by a substantially younger person. See O'Connor, 517 U.S. at 312; Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000); Tatum v. Georgia Pacific Corp., 228 F.3d 926, 931 (8th Cir. 2000); Breeding, 164 F.3d at 1156. Regarding the fourth criterion, "[b]ecause it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case." O'Connor, 517 U.S. at 312. Therefore, the fact that a replacement is substantially younger than the plaintiff is sufficient to create an inference that an employment decision was based on an illegal discriminatory criterion, regardless of whether or not the replacement employee was someone outside the protected class. See id. at 313; Equal Employment Opportunity Comm'n v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir. 1999). There is no dispute that the first and third criteria are satisfied; Plaintiff was born on

August 14, 1936, and was 62 years old at the time he was terminated. However, Plaintiff has failed to establish the second and fourth criteria of the prima facie case.

Plaintiff alleges indirect evidence of discrimination is established by the suspicious timing of his termination only a short time before his doctor had prospectively cleared him to return to work. The report from Dr. Hartleben on February 15, 1999, estimated that on April 1, 1999, Plaintiff could return to working full days. Beck Aff. Ex. E. However, Plaintiff does not dispute that the decision to terminate was made in early February, 1999. Barket Dep. at 74. In any event, Plaintiff was still not able to climb ladders by April 1, 1999. Id. at 108.

Plaintiff has failed to satisfy the fourth element of a prima facie case. Plaintiff asserts that he was replaced by several employees who assumed all his job duties. However, the number of Tech. III employees employed by NextiraOne has decreased from 35 to 33 since Plaintiff was injured, and no new Tech. III employees were hired between January 1, 1999 and July 15, 2001. Birnbaum Aff. ¶¶ 8-9. The uncontested facts demonstrate that Plaintiff was not replaced. Plaintiff has failed to present any evidence that new employees were hired to perform his work, or that younger, similarly situated employees were treated more favorably then he. See Brides v. IIT Research Inst., 894 F.Supp. 335, 339 (N.D. Ill. 1995) (finding no replacement where no new employees were hired and employee functions were either eliminated or absorbed by other employees).

Plaintiff has also failed to satisfy the second element of a prima facie case. Plaintiff admits that from the time of his accident, up until his termination on February 22, 1999, he was unable to perform the essential functions of the Tech. III position and was using crutches until the day he was discharged. Barket Dep. at 46, 49, 51, 55, 58, 65. On the one day in January,

1999, when Plaintiff did work a full day, he was limited to reading documents to two other technicians who then performed the tasks read to them. Id. at 65. In doing this, Plaintiff was still using crutches, doing limited walking, and not using a ladder. Id. This role is substantially different than what Plaintiff was doing prior to his injury as a Tech. III. Plaintiff has not established that he was performing, or able to perform, the essential elements of the Tech. III job at the time of termination.

Even if Plaintiff were able to establish a prima facie case on the basis of indirect evidence, NextiraOne has rebutted a presumption of discrimination by identifying a non-discriminatory reason for termination. Plaintiff was simply unable to perform the duties of a Tech. III. Plaintiff argues that ladder climbing was less than five percent of the essential work required for a Tech. III, and that NextiraOne should have known he was nearing the point where he could again perform the Tech. III job functions. Therefore, Plaintiff argues, the timing of the decision was suspicious and NextiraOne's proffered reason is pretextual. However, Plaintiff admits that the Tech. III job at times required using a ladder. Barket Dep. at 9. Moreover, "the district court may grant summary judgment . . . for the employer even if plaintiff has some evidence of pretext if that evidence, for one reason or another, falls short of proving intentional discrimination." Ryther, 108 F.3d at 848. "Intentional discrimination *vel non* is like any other ultimate question of fact: either the evidence is sufficient to support a finding that the fact has been proven, or it is not." Id. (emphasis in original) (citing Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1335 (8th Cir. 1996)). The Plaintiff has failed to establish that NextiraOne's legitimate, non-discriminatory reason for his termination on February 22, 1999, was merely a pretext for age discrimination.

**b. Disability Discrimination**

The same burden-shifting analysis used for Plaintiff's age discrimination claim applies equally to his disability discrimination claim. The ADA protects qualified persons with disabilities from discriminatory treatment, and requires employers to offer reasonable accommodation to disabled persons. 42 U.S.C. §§ 12102, 12111. To obtain relief under the ADA, an aggrieved employee must establish that he has a disability, that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that he has suffered adverse employment action because of his disability. Benson v. Northwest Airlines, 62 F.3d 1108, 1112 (8th Cir. 1995). The ADA defines a qualified person with a disability as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of his or her job. 42 U.S.C. § 12111(8). For purposes of the statute, "consideration shall be given to the employer's judgment as to what functions of a job are essential." Id. Defendant admits for purposes of this motion that Plaintiff was disabled. Def. Mem. in Supp. at 14. However, Defendant asserts that Plaintiff was unable to perform the essential functions of his job, and therefore he was not "qualified" under the ADA.

Plaintiff bears the burden of proving that he could perform all the essential functions of his job at the time of his termination. Benson, 62 F.3d at 1112. Plaintiff argues that he was qualified for the essential functions of the Tech. III position because he could perform many of the Tech. III duties despite his disability, and all the required duties with reasonable accommodation. Plaintiff relies on his affidavit to support his assertion that he could perform the

essential job duties.[3] Schiek Aff. Ex. A at ¶ 25. Plaintiff further argues that ladder climbing is not an essential function of the Tech. III position. Pl. Mem. in Opp. at 22. Plaintiff also asserts that a reasonable accommodation would have been for his dispatcher to direct him to jobs that did not involve climbing a ladder.[4] Id. at 24.

The determination of qualification must be based on the individual's capabilities at the time of the employment decision. Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1059 (7th Cir. 1998) (citing 29 C.F.R. § 1630.2(m) (1997)). In his deposition, Plaintiff admits that he could not perform all the essential functions of the Tech. III position at NextiraOne on the date of his termination, February 22, 1999. Barket Dep. at 46, 51, 55, 58, 65. While Plaintiff asserts in his affidavit that he could perform the essential functions of the Tech. III position, "a party may not create a question of material fact, and thus forestall summary judgment, by submitting an affidavit contradicting his own sworn statements in a deposition." Dotson v. Delta Consol. Indus., Inc., 251 F.3d 780, 781 (8th Cir. 2001). Plaintiff

---

[3] Plaintiff also relies on a letter from the Defendant's Senior Human Resources Representative, Gail Schuster, but this letter merely summarizes Plaintiff's own view of his charges. Schiek Aff. Ex. H. Plaintiff further relies on his letter to Defendant of April 15, 2000, but this also merely summarizes his own statement of his charge, largely parallel to the statements contained in Plaintiff's Affidavit. Id. Ex. K. Finally, Plaintiff relies on the May 5, 1999, medical report of Dr. Hartleben stating that he was "disappointed" that Plaintiff was not returned to his previous job, because he believed Plaintiff would have been able to return to that job "in short order." Id. Ex. G. However, this report post-dates the termination decision by nearly three months.

[4] Plaintiff further contends that NextiraOne should restructure his job. Pl. Mem. in Opp. at 22. However, NextiraOne had no obligation to create Plaintiff's light duty position, nor to continue it. See Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 729 (6th Cir. 2000) (holding that an employer is not obligated to create a position not then in existence). NextiraOne should not be punished for having created temporary work for Plaintiff and later deciding to terminate Plaintiff when continuation of such work became unfeasible. Bird Aff. Ex. B. Moreover, "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." Id.

stated that the essential functions of the Tech. III position included installing and maintaining telephone and data communications apparatus, including taking care of computer terminals and telephone switches, and laying cable. Barket Dep. at 6-7. Performing these duties required Plaintiff to lift between 50 and 75 pounds, to do commercial driving, to climb steps, to stand, bend and stoop, and occasionally to use a ladder. Id. at 9, 11, 12. Plaintiff's Report of Work Ability Forms, completed by Dr. Hartleben, limit him from performing the essential functions of the Tech. III position up through and including the date of Plaintiff's termination. Beck Aff. Exs. A-D. Plaintiff's temporary light duty tasks of filing and paperwork were no longer available at NextiraOne. Plaintiff admitted that he was not performing the essential functions of the Tech. III position at the time of his termination. Barket Dep. at 64-65. The evidence supports NextiraOne's claim that Plaintiff was terminated because he was unable to perform the essential functions of the Tech. III position. Even were Plaintiff to satisfy a prima facie case of disability discrimination, Plaintiff has failed to present sufficient evidence to show that NextiraOne's decision to terminate him was a pretext for disability discrimination.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that NextiraOne's Motion for Summary Judgment [Doc. No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: July 3, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.